UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INEZ LAURA R.,

            Plaintiff,

    v.

KILOLO KIJAKAZI,

            Defendant.

Case No.  22-cv-04665-DMR

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 26

      Plaintiff Inez Laura R. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq.  [Docket No. 16.]  The Commissioner cross-moves to affirm.  [Docket No. 26.]  For the reasons stated below, the court grants Plaintiff's motion in part, denies the Commissioner's motion, and remands this matter for further proceedings.

I.     **PROCEDURAL HISTORY**

      Plaintiff first filed an application for Social Security Disability Insurance (SSDI) benefits in 2010, which was granted on January 24, 2014 after a hearing was held on January 9, 2014.  Administrative Record ("A.R.") 100-105, 31-50.  When she married, Plaintiff became financially ineligible for Title XVI benefits.  A.R. 247.  After her husband died, Plaintiff re-applied for SSDI benefits on March 8, 2018, alleging disability beginning June 10, 2010.  A.R. 16-25.  The application was initially denied on May 8, 2018, and again on reconsideration on August 3, 2018.  A.R. 106-116, 118-131.  An Administrative Law Judge ("ALJ") held a hearing on February 11, 2020 and issued an unfavorable decision on March 2, 2020.  A.R. 51-95, 16-25.  The Appeals Council denied Plaintiff's request for review on July 29, 2020, and Plaintiff sought review in this

United States District Court
Northern District of California

1   court pursuant to 42 U.S.C. § 405(g).  A.R. 1-5, 1131-32.  During the proceedings, the

2   Commissioner agreed to a voluntary remand and judgment entered on August 3, 2021.  A.R. 1133.

3     On remand, the Appeals Council vacated the March 2, 2020 decision, and remanded the

4   case to an ALJ.  A.R. 1153-1156.  The ALJ held a new hearing on May 16, 2022 and issued a

5   second unfavorable decision on June 2, 2022.  A.R. 1073-1105, 1038-1063.  The ALJ determined

6   that Plaintiff has spondylosis, degenerative disc disease, asthma, depression, anxiety, and

7   substance abuse, which are severe impairments.  A.R. 1041.  The ALJ found that Plaintiff retains

8   the following residual functional capacity (RFC):

> The claimant has the residual functional capacity to perform less than-
> medium work as defined in 20 CFR 416.967(c) except the claimant
> can lift, carry, push or pull 50 pounds occasionally and 25 pounds
> frequently.  The claimant can sit for 6 hours, stand for 4 hours, and/or
> walk for 4 hours, in an 8-hour workday.  The claimant can frequently
> climb ramps, stairs, ladders, ropes, or scaffolds. The claimant can
> frequently stoop, kneel, crouch, or crawl.  The claimant can perform
> simple, routine tasks.  The claimant can make simple work-related
> decisions.

A.R. 1048.

15     Relying on the opinion of a vocational expert (VE) who testified that an individual with

16   such an RFC could perform other jobs existing in the economy, including table worker/inspector,

17   final assembler, and office helper, the ALJ concluded that Plaintiff is not disabled.  A.R. 1062.

18   Plaintiff now seeks review of the June 2, 2022 decision.

## II. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

20     To qualify for disability benefits, a claimant must demonstrate a medically determinable

21   physical or mental impairment that prevents her from engaging in substantial gainful activity[1]  and

22   that is expected to result in death or to last for a continuous period of at least twelve months.

23   *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The

24   impairment must render the claimant incapable of performing the work she previously performed

25   and incapable of performing any other substantial gainful employment that exists in the national

26   economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

27

28   [1] Substantial gainful activity means work that involves doing significant and productive physical
or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

United States District Court
Northern District of California

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

1.     At the first step, the ALJ considers the claimant's work activity, if any.  If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2.     At the second step, the ALJ considers the medical severity of the claimant's impairment(s).  If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3.     At the third step, the ALJ also considers the medical severity of the claimant's impairment(s).  If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

4.     At the fourth step, the ALJ considers an assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5.     At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work.  If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

## III.   ISSUES FOR REVIEW

Plaintiff raises six issues in her challenge to the ALJ's decision:

1.   Whether the ALJ erred at Step 2 by failing to make a severity finding about Plaintiff's schizoaffective disorder, borderline personality disorder, Post-Traumatic Stress Disorder ("PTSD"), and memory impairment, and in finding that Plaintiff's "cognitive issues" were not severe;

1   2. Whether the ALJ erred in evaluating the medical opinions;

2   3. Whether the ALJ erred by ignoring parts of the medical opinions;

3   4. Whether the ALJ erred in finding Plaintiff not credible;

4   5. Whether the ALJ erred in discounting the lay testimony of Plaintiff's daughter; and

5   6. Whether the ALJ failed to support the RFC assessment.

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. DISCUSSION

### A. Medical Opinions

Plaintiff contends that the ALJ erred in analyzing the medical opinions of: 1) David G. Jarmon, M.D.; 2) Phillip Cushman, Ph.D.; 3) Jonathan Gonick-Hallows, Ph.D.; 4) Suzanne Moineau, Psy.D.; and 4) state agency psychological consultants Adamo, Psy.D. and Morris,

United States District Court
Northern District of California

Psy.D.[2]

### 1.    Legal Standard

For claims filed before March 27, 2017, "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).  However, the regulations regarding evaluation of medical evidence have been amended and several of the prior Social Security Rulings, including Social Security Ruling 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"), have been rescinded for claims filed after March 27, 2017, as is the case here.  *See* Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a).

The operative regulations provide that the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  20 C.F.R. § 416.920c(a).  They "displace [the Ninth Circuit's] longstanding case law" requiring an ALJ to articulate "specific and legitimate reasons" for rejecting a treating physician's opinion where the opinion is contradicted by other medical opinions. *Woods v. Kijakazi,* 32 F.4th

---

[2] Merrill Featherstone, MFT also provided a medical opinion about Plaintiff's mental ability to perform work-related activities on February 2, 2013.  A.R. 670-71.  Plaintiff does not clearly challenge the ALJ's assessment of MFT Featherstone's opinion.  Because Plaintiff appears to challenge the opinion in a footnote, the court briefly reviews the argument.  Plaintiff contends that the ALJ's consistency assessment "does not pass muster" for the same reasons identified in connection with Drs. Cushman, Gonick-Hallows, and Moineau.  Mot. at 20, n.7.  For the reasons detailed in the rest of the opinion, the court agrees that the ALJ failed to provide substantial evidence to support his conclusion that Featherstone's opinion was not consistent with the objective medical evidence.  On remand, the ALJ should examine whether Featherstone's opinion is consistent with the opinions of the other mental health providers.

Plaintiff also argues that although the supportability analysis "presents a closer question," it ultimately comes up short.  *Id.*  With respect to this argument, Plaintiff only asserts that the ALJ failed to acknowledge that Featherstone's opinion was in part based on his 20-year relationship with Plaintiff.  Although an ALJ may consider a medical source's treatment relationship with the claimant in evaluating the persuasiveness of his opinion, *see* 20 C.F.R. § 416.920c(c)(3), that factor is different from the opinion's "supportability."  *See* 20 C.F.R. § 416.920c(c)(1).  Plaintiff's argument is flawed because it does not explain how Featherstone's relationship with Plaintiff goes to the question of supportability.

785, 787, 791.  Accordingly, the ALJ here was not required to provide "specific and legitimate" reasons for rejecting Plaintiff's treating or examining physicians' opinions.

Under the regulations, the Commissioner instead must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors."  20 C.F.R. § 416.920c(a)-(c).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that "form[ed] the foundation of the [prior] treating source rule."  Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853; *see also Woods*, 32 F.4th at 791-92.  The ALJ is required to explicitly address supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).

With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(1).  Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

Typically, the ALJ "may, but [is] not required to," explain how they considered the remaining three factors listed in the regulations.  *Id.*  However, where two or more distinct medical opinions are equally supported and consistent, the ALJ should articulate how they considered factors other than supportability and consistency, including the treatment relationship, the extent of specialization, and any other relevant factors.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *see also Woods,* 32 F.4th at 792 (discussing 20 C.F.R. § 404.1520c(b)(3)) ("In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'").

The ALJ's determination regarding persuasiveness of medical opinions must be supported by substantial evidence.  *See Woods,* 32 F.4th at 787.

1

2

### 2.   Analysis

#### a.   Dr. Jarmon

Dr. Jarmon testified as a medical expert in psychology at the January 9, 2014 hearing before ALJ Alberto E. Gonzalez.  A.R. 31-50.  He testified that Plaintiff suffers from a "seizure disorder" and from a "significant loss of cognitive functioning."  A.R. 43.  He also noted that Plaintiff was diagnosed with PTSD and schizoaffective disorder.  *Id.*  Based on these diagnoses, Dr. Jarmon opined that Plaintiff met the criteria of listings 12.02, 12.04, and 12.06 in combination. *Id.*  With respect to the Paragraph B factors, Dr. Jarmon testified under previous criteria that Plaintiff had marked limitations in activities of daily living, social functioning, and concentration, persistence, or pace.  A.R. 45.  Finally, Dr. Jarmon noted that Plaintiff had three, four, or more episodes of decompensation.  *Id.*

The ALJ did not discuss Dr. Jarmon's opinion.  *See* A.R. 1038-1063.  The Commissioner concedes that the ALJ failed to address Dr. Jarmon's opinion but argues that the Appeals Council did not specifically instruct the ALJ to evaluate the persuasiveness of Dr. Jarmon's testimony. Opp'n at 11.  The Commissioner cites no authority to support the contention that an ALJ may discount a medical opinion based on an Appeals Council's directives.

Regardless of the Appeals Council's instructions, "[t]he new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors, which appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion."  *Renee N. v. Kijakazi*, No. 6:20-CV-01131-SB, 2021 WL 4554475, at *11 (D. Or. Oct. 5, 2021) (internal quotations marks and citation omitted); *see also* 20 C.F.R. § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find *all of the medical opinions* and all of the prior administrative medical findings in your case record") (emphasis added).

Accordingly, the ALJ erred by wholly failing to consider Dr. Jarmon's medical opinion. *See Velvet L. J. K. v. Kijakazi*, No. 5:23-CV-00054-MAR, 2023 WL 5019506, at *8 (C.D. Cal. Aug. 4, 2023) (collecting cases).  As discussed below, with some variations, Dr. Jarmon's medical

United States District Court
Northern District of California

1   opinion is generally consistent with the opinions of the other mental health specialists, Dr.

2   Cushman, Dr. Gonick-Hallows, and Dr. Moineau.  The ALJ did not analyze the consistency of the

3   opinions provided by these sources.

### b.   Dr. Cushman

5   At the request of Social Security, Dr. Cushman performed a psychological evaluation of

6   Plaintiff on July 16, 2012.  A.R. 663-669.  Dr. Cushman opined that Plaintiff 1) is not able to

7   perform any detailed, complex, simple, or repetitive tasks in a work setting; 2) will have

8   difficulties regularly attending or consistently participating in a work setting; 3) is not able to work

9   a normal workday or work week; 4) will need special or additional supervision in nearly all

10  aspects of trying to get her to work; 5) is able to follow simple verbal instructions from

11  instructions, but not consistently; 6) is not able to follow any complex instructions from

12  supervisors; 7) will have great difficulties getting along with supervisors, co-workers, or the

13  general public for any length of time; and 8) will have great difficulty dealing with the usual

14  stressors encountered in a competitive work environment.  A.R. 668.

15  The ALJ found Dr. Cushman's opinion not persuasive for two main reasons.  A.R. 1052-

16  53.  First, because Dr. Cushman's opinion was prepared "well prior" to the relevant period.  A.R.

17  1053.  Second, because the opinion is not consistent with the recent medical evidence and hearing

18  testimony.[3]  *Id.* (citing Ex. B1A (ALJ decision dated 1/24/2014)).

19  While the ALJ may reject medical opinions that are more remote in time, *Johnson v.*

20  *Astrue*, 303 Fed. App'x 543, 545 (9th Cir. 2008), the ALJ did not cite any medical evidence that is

21  inconsistent with Dr. Cushman's assessment.  Rather, almost all of the ALJ's citations were to

22  observations regarding Plaintiff's mental status as evaluated by non-mental health providers

23  during unrelated visits.[4]  For example, the ALJ cited to a October 30, 2017 visit for a cough,

---

[3] The ALJ also noted in passing that 1) Plaintiff "put forth very little effort into the testing at times," A.R. 1052, 2) Dr. Cushman's review was "vague . . . without specific limitations expressed in vocationally relevant terms," and 3) his opinion regarding Plaintiff's ability to work a normal workday or work week "related to a legal conclusion reserved for the Commissioner." A.R. 1053-54.  Because these reasons do not undermine the consistency or supportability of Dr. Cushman's findings, without more, they are insufficient to undermine his medical opinion.

[4] The ALJ cited two visits somewhat related to Plaintiff's mental health.  *See* A.R. 1053 (citing

during which David Betat, a doctor at Lake County Tribal Health, recorded that Plaintiff was "oriented to person, place and time," and displayed "normal memory" and "normal judgment" as part of a routine assessment.  A.R. 1053 (citing A.R. 401, Ex. B1F/12).  *See also, e.g.*, A.R. 1053 (citing A.R. 917, Ex. B20F/4 (notes by Eric Laurence, M.D. at Sutter Lakeside Emergency Department describing visit for abdominal pain); A.R. 710, Ex. B11F/3 (notes from Lake County Tribal Health for visit regarding back pain and medicine refill); A.R. 1356, Ex. B23F/19 (progress notes for routine visit at Lake County Tribal Health regarding x-ray results for Plaintiff's knee and Hepatitis C treatment); A.R. 1374, Ex. B24F/4 (notes by David A. Carbonell, M.D. at Sutter Lakeside Hospital Emergency Department for visit regarding back, neck, and shoulder pain);[5] A.R. 1382, Ex. B24F/12 (notes from visit at Sutter Lakeside Hospital Emergency Department for "muscle problem"); A.R. 1541, Ex. B28F/3 (notes from routine visit with Eileen Davies, DNP at Lake County Tribal Health); A.R. 1918, Ex. B33F/52 (notes by David Betat, M.D. at Lake County Tribal Health recounting acute visit for nausea and vomiting)).

The ALJ's mental health citations therefore do not demonstrate "supportability" or persuasiveness, because the citations are tangential to the particular sources' medical opinions.  20 C.F.R. § 416.920c(c)(1).  Although the ALJ's citations demonstrate that at times, Plaintiff had a normal mood and affect, full orientation, or a normal memory in non-mental health visits, they do not sufficiently undermine the functional limitations opined to by Dr. Cushman – who performed a comprehensive psychological evaluation of Plaintiff – or the severity of Plaintiff's impairments.

---

A.R. 969, Ex. B21F/4 (notes by physician assistant at Sutter Health Lakeside Hospital during emergency department visit regarding "anxiety and panic attack and nausea," and reporting "anxious and tearful mood, normal affect, normal speech, no akathisia, no auditory visual hallucinations, no delusional thinking, no self-harm ideation or intent to harm others"); A.R. 1417, Ex. B24F/47 (notes from visit at emergency department for abdominal pain, nausea, headache, skin problem, anxiety, and panic attack, and reporting "normal behavior, and normal judgment")). The first visit was conducted by a physician assistant, not a mental health provider.  During that appointment, Plaintiff agreed to set up a follow-up appointment "with her regular assigned counselor/therapist" and to "call Lake County behavioral health . . . to set up a screening appointment."  A.R. 970.  The second visit reported "normal behavior" and "normal judgment" but nevertheless diagnosed Plaintiff with anxiety.  A.R. 1418.

[5] The ALJ cited A.R. 1755, Ex. B31F/5, which includes the same notes by David A. Carbonell, M.D. at Sutter Lakeside Hospital Emergency Department for a visit regarding back, neck, and shoulder pain.

9

Because the medical records cited by the ALJ fail to demonstrate that Dr. Cushman's opinion lacked consistency with the totality of the record, the ALJ's decision to reject Dr. Cushman's opinion was not supported by substantial evidence.  The court remands for the ALJ to reassess Dr. Cushman's opinion.

### c.      Dr. Gonick-Hallows

Dr. Gonick-Hallows' October 17, 2019 opinion was based on a three-hour "formal evaluation with cognitive testing, projective assessment, history and mental status evaluation," during which he assessed Plaintiff with dementia due to head trauma, mood disorder (likely mixed bipolar disorder, currently with predominantly depressed features), organic personality disorder with extreme disinhibition of emotions, mild mental retardation, and mixed substance abuse in remission.  A.R. 884, 911.  Dr. Gonick-Hallows' September 12, 2019 psychological evaluation involved a clinical interview, mental status examination, complete psychological examination, and diagnostic testing.  A.R. 881-884.  Dr. Gonick-Hallows found that Plaintiff "appeared to put forth good effort throughout the testing session" and "tried hard on every single task[.]"  A.R. 883.  Her performance overall on the Wechsler Adult Intelligence Scale-IV resulted in a full-scale IQ of 63, "in the extremely low range," with low borderline verbal performance and extremely low performance on perceptual learning and working memory, and low borderline performance on visual-motor processing.  A.R. 883, 913.  Dr. Gonick-Hallows concluded that Plaintiff has "very poor memory functioning, flowed processing, very limited abstract reasoning ability, and difficulty learning new tasks."  A.R. 884.  He noted that "there is history of bipolar disorder in the immediate family and Ms. Rogers had moments of acceleration during the interview.  Of concern as well is her rampant emotionality that results in extreme episodes of emotional deterioration."  Dr. Gonick-Hallows explained that "[o]n three occasions during formal testing, [Plaintiff] began laughing and laughed uncontrollably for minutes at a time.  This is highly suspicious for an organic personality feature."  *Id.*  As a result, Dr. Gonick-Hallows found that Plaintiff would have extreme difficulty interacting effectively with co-workers, supervisors, and the general public in typical work setting, is able to learn very simple new tasks but performs them very slowly, does not appear to have the pace or persistence to work at even simple novel tasks in typical work

United States District Court
Northern District of California

United States District Court
Northern District of California

1  settings, and has a marked-extreme limitation in her ability to interact effectively with co-workers,

2  supervisors, and the general public in competitive work settings.  *Id.*

3        Dr. Gonick-Hallows later completed a symptomology checklist based on his evaluation

4  and testing.  A.R. 912.  He noted that Plaintiff suffers from: thoughts of suicide, blunt, flat or

5  inappropriate affect, impairment of impulse control, difficulty thinking or concentrating,

6  psychomotor agitation or retardation, persistent disturbances of mood or affect, intense and

7  unstable interpersonal relationships and impulsive and damaging behavior, deeply ingrained

8  maladaptive patterns of behavior, memory impairment, and loss of intellectual ability of 15 IQ

9  points or more, among several other symptoms.  *Id.*  Dr. Gonick-Hallows concluded that Plaintiff

10  has (1) marked-extreme limitations in understanding, remembering, and applying information; (2)

11  marked limitations in interacting with others; (3) extreme limitations in concentrating, persisting,

12  or maintain pace; and (4) the equivalent of extreme limitations in her ability to adapt or manage

13  herself.  A.R. 913.  He also found that Plaintiff has minimal capacity to adapt to changes in her

14  environment or to demands that are not already part of her daily life.  *Id.*

15        The ALJ found Dr. Gonick-Hallows' September 12, 2019 assessment "partially persuasive,

16  generally, only where it is relatively consistent with the objective medical records showing the

17  claimant has severe mental impairments that affect her ability to perform tasks[.]"  A.R. 1058.  He

18  noted that Dr. Gonick-Hallows' review supported "certain parts of the assessment of limitations,"

19  including restrictions in Plaintiff's ability to learn simple tasks, and that it was "generally

20  consistent with other objective exams indicating some similar findings and related diagnoses and

21  treatment."  *Id.*  However, the ALJ found that other parts of Dr. Gonick-Hallows' review were

22  "relatively vague ('having extreme difficulty'; 'did not appear'; 'would be expected')" and "not

23  expressed in vocationally relevant terms (such as specific time limits, or using terms such as

24  'occasionally' or 'frequently')."  In addition, the ALJ noted that other exams indicated "relatively

25  unremarkable findings, such as full orientation, normal memory, normal judgment, normal mood,

26  normal affect, normal behavior, normal speech, normal thought, and normal judgment."  *Id.*  In

27  support, the ALJ cited to essentially the same string of tangential evidence he relied on in rejecting

28  Dr. Cushman's opinion, as discussed above.  As to Dr. Gonick-Hallows' October 17, 2019

1    assessment, the ALJ likewise found it to be "only partially persuasive, generally, for similar

2    reasons, noting that the latter assessment did not include any specific objective exam findings to

3    support the marked to extreme levels of functioning described in the review." A.R. 1058.

4            None of the reasons proffered by the ALJ are supported by substantial evidence. As a

5    preliminary matter, the court reads Dr. Gonick-Hallows' September 12 and October 17, 2019

6    reports in conjunction, as the latter suggests that it relied on a "three hour formal evaluation with

7    cognitive testing, projective assessment, history and mental status evaluation," and the reports are

8    dated less than a month apart. A.R. 911.

9            As to the ALJ's statement that Dr. Gonick-Hallows' opinion was vague, the October 17,

10   2019 report adequately described the findings in vocationally relevant terms for mental

11   impairments, such as "none, mild, moderate, marked, or extreme." *See* 20 C.F.R. Part 4040, Sub

12   P, App. 1, 12.00.F.2 ("We evaluate the effects of your mental disorder on each of the four areas of

13   mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked,

14   and extreme limitation."). Dr. Gonick-Hallows' September 12, 2019 report includes similar

15   findings. *See, e.g.*, A.R. 884 ("Her very poor memory and limited interpersonal skills would be

16   expected to interfere in a marked to extreme way with her ability to interact effectively with co-

17   workers, supervisors, and the general public in competitive work settings").

18           Next, as the court previously discussed at length, almost all of the ALJ's citations in

19   support of his assertion that other exams indicated "relatively unremarkable findings" were to

20   observations regarding Plaintiff's mental status as evaluated by non-mental health providers

21   during visits unrelated to Plaintiff's mental health.

22           Finally, the court disagrees with the ALJ's assertion that Dr. Gonick-Hallows' October 17,

23   2019 assessment did not include any specific objective findings to support the marked to extreme

24   levels of functioning. To the contrary, the September 12, 2019 report – on which the October 17,

25   2019 assessment logically relies – describes in detail Plaintiff's results on various diagnostic tests.

26   *See* A.R. 883.

27           On this record, the ALJ failed to provide substantial evidence to support his determination

28   that Dr. Gonick-Hallows' opinion is not persuasive.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    d.   **Dr. Moineau**

   Dr. Moineau completed a mental impairment questionnaire on August 30, 2019 based on bi-weekly appointments with Plaintiff.  A.R. 828.  She diagnosed Plaintiff with schizophrenia, PTSD, major depression, panic disorder, and polysubstance dependence in partial remission.  *Id.* Moineau's clinical findings included periodic auditory hallucinations, severe anxiety, occasional panic attacks, feelings of helplessness and hopelessness, past suicidal ideation, anhedonia, isolation, and relational problems.  *Id.*  She found that Plaintiff suffered from the following symptoms, among others: impairment in impulse control; irritability; generalized persistent anxiety; mood disturbance; recurrent and intrusive recollections of traumatic experience, which are a source of marked distress; persistent disturbances of mood or affect; paranoid thinking or inappropriate suspiciousness; possible bipolar syndrome; intense and unstable interpersonal relationships and impulsive and damaging behavior; perceptual or thinking disturbances; hallucinations or delusions; emotional lability; deeply ingrained maladaptive patterns of behavior; memory impairment; panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; and disproportionate fear or anxiety about at least two different situations.  *Id.*  Dr. Moineau concluded that Plaintiff has (1) no or mild limitations in understanding, remembering, and applying information; (2) moderate limitations in interacting with others; (3) marked limitations in concentrating, persisting, or maintaining pace; and (4) marked limitations in adapting or managing oneself.  A.R. 830.  Dr. Moineau noted Plaintiff's medical treatment diminishes her symptoms, and Plaintiff has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life.  *Id.*  She also provided a detailed assessment of Plaintiff's ability to do work-related activities on a day-to-day basis in a regular work setting.  A.R. 830-31.  Dr. Moineau found that Plaintiff had "noticeable difficulty . . . no more than 10 percent of the workday or work week" to perform the following tasks: remembering work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; asking simple questions or requesting assistances; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; and being aware of normal hazards

13

and taking appropriate precautions.  A.R. 831.  She found that Plaintiff had "noticeable difficulty . . . from 11 to 20 percent of the workday or work week" in: maintaining attention for a two-hour segment; sustaining an ordinary routine without special supervision; making simple work-related decisions; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.  *Id.*  Finally, Dr. Moineau opined that Plaintiff had "noticeable difficulty . . . from 21 to 40 percent of the workday or work week" to perform the following activities: maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and dealing with normal work stress.  *Id.*  These limitations were supported by Dr. Moineau's findings of auditory hallucinations; regular panic attacks and anxiety, particularly around others; and chaotic relationship patterns, which result in problems relating with others and are exacerbated by "perceived persecutory delusions."  *Id.*  On average, Dr. Moineau found that Plaintiff's impairments or treatment would cause Plaintiff to be absent from work more than four days per month.  A.R. 832.

The ALJ found Dr. Moineau's assessment to be "partially persuasive, generally, where it is consistent with the overall record showing the claimant has severe mental impairments that affect her ability to perform certain basic mental-related work activities."  A.R. 1056.  In support of this finding, the ALJ noted that Dr. Moineau's assessment did not include any objective findings to support the restrictions described in her review.  *Id.*  He also found that Dr. Moineau's assessment of "marked restrictions" was not consistent with other objective exams showing "relatively normal to mild findings[.]"  A.R. 1057 (citing same medical records as those mentioned in connection with Drs. Cushman and Gonick-Hallows).

With respect to the ALJ's finding on supportability, his statement that Dr. Moineau's opinion did not include any objective findings is contradicted by the report itself, which includes specific clinical findings and observed signs and symptoms manifested by Plaintiff.  *See* A.R. 828-29.  In opposition, the Commissioner recounts the ALJ's findings as to Dr. Moineau but fails to

United States District Court
Northern District of California

1   cite any authority requiring a medical source to provide additional objective findings.  *See* Opp'n

2   at 8-9.  In assessing consistency, the ALJ relied again on the same unpersuasive string of treatment

3   notes with no bearing on Plaintiff's mental health.

4          Accordingly, the ALJ failed to provide substantial evidence to support his determination

5   that Dr. Moineau's opinion is not persuasive.

6                          **e.**      **State agency consulting psychologists**

7          Plaintiff also argues that the ALJ erred in affording persuasive effect to the state agency

8   consulting psychologists' opinions.  Mot. at 20-21.  The ALJ found the opinions of Drs. Adamo

9   and Morris partially persuasive because they were "consistent, generally, with other objective

10  medical records . . . particularly regarding the relatively unremarkable psychiatric findings on

11  examination."  A.R. 1054 (citing same string of medical records cited in connection with Drs.

12  Jarmon, Gonick-Hallows, and Moineau).  Because the court remands the case to the ALJ to

13  reconsider the opinions of Drs. Jarmon, Cushman, Gonick-Hallows, Moineau, and Featherstone,

14  which may impact the ALJ's analysis of the Paragraph B factors, it does not reach the question of

15  whether the ALJ erred in analyzing the opinions of Drs. Adamo and Morris.

16         **B.**      **Other Issues**

17         The ALJ's error in assessing the medical opinions may have impacted the ALJ's severity

18  findings at Step 2, his assessment of Plaintiff and her daughter's credibility, as well as his

19  assessment of the RFC.  Accordingly, the court does not reach Plaintiff's remaining challenges to

20  the ALJ's opinion and remands the case for further proceedings consistent with this opinion.

21  **VI.    CONCLUSION**

22         The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's

23  decision "with or without remanding the case for a rehearing."  42 U.S.C. § 405(g); *see also*

24  *Garrison*, 759 F.3d at 1019.  "[W]here the record has been developed fully and further

25  administrative proceedings would serve no useful purpose, the district court should remand for an

26  immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However,

27  "[r]emand for further proceedings is appropriate where there are outstanding issues that must be

28  resolved before a disability determination can be made, and it is not clear from the record that the

ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  On remand, the ALJ must properly evaluate the issues discussed above based on the applicable law and guidance provided in this opinion.

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part, as the court did not reach all of the arguments in her motion.  Defendant's motion for summary judgment is denied.  This matter is remanded for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 26, 2023

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California

16